IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TAMI B. ANTHONY,

        Plaintiff,

vs.   No. CIV 03-831 LCS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand Administrative Agency Decision (Doc. 9), filed April 14, 2004. The Commissioner of Social Security issued a final decision denying Plaintiff's application for supplemental security income. This matter comes before this Court pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is not well-taken and should be **DENIED**.

**I.    STANDARD OF REVIEW**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence that a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The decision of an Administrative Law Judge ("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record.  *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)).  The Secretary has established a five-step process for evaluating a disability claim.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988).  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education and prior work experience.  *See Gatson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

## II.     PROCEDURAL HISTORY

Plaintiff, now 38 years old, filed her application for supplemental security income on December 9, 1997, alleging disability commencing on November 26, 1997.  (R. at 59).  Plaintiff did not allege the basis for her disability in this application.  (Id.)  Plaintiff received her G.E.D. in 1983 and has taken some courses in business administration.  (R. at 76).  She has worked for short periods as a delivery driver, housekeeper, production worker, and library assistant.  (Id.)

Plaintiff's application for supplemental security income was denied at the initial level on February 4, 1998 (R. at 33-36) and at the reconsideration level on April 9, 1998. (R. at 39-41). Plaintiff appealed the denial of her application by filing a Request for Hearing by Administrative Law Judge. (R. at 42). Attorney E.C. "Mike" Gomez was retained by Plaintiff on June 24, 1998. (R. at 24). Plaintiff testified at the hearing, held on April 20, 1999. (R. at 193-214).

The ALJ issued his decision on June 23, 1999 (R. at 30-32), analyzing Plaintiff's claim in accordance with the sequential evaluation set forth in 20 C.F.R. § 404.1520(a)-(f). At step one of the evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date she filed for supplemental security income. (Id.) At the second step, the ALJ found that Plaintiff had an impairment or combination of impairments considered 'severe' based on the requirements of 20 C.F.R. § 404.1520(b). (Id.) The ALJ further found that Plaintiff's medically determinable impairments did not meet or equal any of the impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (R. at 31). The ALJ also found that Plaintiff was not fully credible regarding the extent of her limitations. (Id.) At step four, the ALJ found that Plaintiff had a Residual Functional Capacity ("RFC") for at least light work, limited by an inability to perform repetitive hand movements. (Id.) At step five, the ALJ found that Plaintiff was capable of returning to her past relevant work. (R. at 32). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time during the period under review. (Id.)

Plaintiff filed a Request for Review of Hearing Decision on August 19, 1999. The Appeals Council granted this request and remanded the case to the Administrative Law Judge for further proceedings on January 2, 2002. (R. at 47-49).

This matter again came before the ALJ for a hearing on September 17, 2002. (R. at 215-267). Plaintiff was again represented by Mr. Gomez. (Id.) Plaintiff, Martin Petsonk, the Plaintiff's boyfriend, and Vocational Expert Bertina Telles testified at the hearing. (Id.)

The ALJ issued his decision on February 27, 2003 (R. at 13-18), analyzing Plaintiff's claim in accordance with the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f). At step one of the sequential evaluation, the ALJ found that Plaintiff had engaged in substantial gainful activity during the period under review. (R. at 13). However, because the ALJ could not determine from the record the exact periods during which Plaintiff was working enough hours to establish substantial gainful activity, the ALJ continued with the sequential evaluation. (R. at 14).

Although the ALJ did not specifically make a finding at step two as to whether Plaintiff had an impairment or combination of impairments considered 'severe' under 20 C.F.R. § 404.1520(b), he did proceed to evaluate Plaintiff at steps three, four and five of the sequential evaluation. Therefore, I will assume for purposes of this opinion that the ALJ found that Plaintiff did have severe impairments at step two. At step three, the ALJ found that Plaintiff's medically determinable impairments did not meet or equal any of the impairments found in the Listings, Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (R. at 14). The ALJ also found that Plaintiff was not fully credible regarding the extent of her limitations. (R. at 14-15). At step four, the ALJ found that Plaintiff was capable of returning to some of her past relevant work. (R. at 17-18). Although the ALJ could have halted the inquiry at this point, he proceeded to step five, finding that Plaintiff had a Residual Functional Capacity ("RFC") for exertionally medium work activities which did not require repetitive motion or utilization of the hands. Nonexertional factors were not found to have significantly eroded Plaintiff's RFC. (R. at 15). Accordingly, the

ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time during the period under review. (R. at 18).

Plaintiff filed a Request for Review of Hearing Decision on March 21, 2003 and the Appeals Council denied the request for review on May 7, 2003. (R. at 9, 5-7). Hence, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On July 16, 2003, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### III.    ANALYSIS AND FINDINGS

Plaintiff has a history of carpal tunnel syndrome and accompanying pain and weakness in the hands, first documented in this record after a crush injury to the right hand on July 28, 1997. (R. at 143). Plaintiff saw Dr. Daniel Raes following this injury on July 29 and July 30, 1997. An x-ray of Plaintiff's hand was normal, but she was noted to have decreased grip strength and a cool sensation along the distribution of the ulnar nerve. (Id.) Dr. Raes indicated at that time that he hoped Ms. Anthony would improve over the weekend.

On August 5, 1997, Plaintiff again saw Dr. Raes for further evaluation of right hand pain. She had tried to return to work, but continued to experience discomfort in her hand. (R. at 140). Dr. Raes expected that the hand would continue to be sore for several weeks. Plaintiff was noted to have normal sensation and grip strength. It was noted that she was unable to take anti-inflammatory agents due to an allergy to aspirin. (Id.) Dr. Raes sent Plaintiff for physiotherapy. (Id.)

Ms. Anthony visited the Roswell Hand Clinic for physical therapy on August 6, 1997. (R. at 121-123). She reported that the pain in her hand had improved somewhat, but that she still

experienced soreness and aching in the right hand as well as decreased circulation and mobility. (Id.) She further reported that the pain, on a scale of 1-10, was most often a four, sometimes ranging to a 6 or a 7. (Id.) Plaintiff was provided with a thumb splint and was advised on avoiding activities that caused pain. (Id.)

Plaintiff again visited the Roswell Hand Clinic on August 22, 1997, at which time it was noted that she had been rehired by her former employer and was working full-time. (R. at 119). She continued to report aching in the hands and numbness in the tips of the middle and ring fingers. (Id.) She also reported dropping objects frequently. (Id.) It was recommended at that time that Plaintiff continue therapy three times per week for an additional three week period. (R. at 120).

An evaluation performed by Dr. Raes on September 10, 1997 revealed continued cramping in the hand, especially near the thumb and it was recommended that Plaintiff continue therapy at the Roswell Hand Clinic for another three weeks. (R. at 140.) Dr. Raes felt Plaintiff had good range of motion in the right hand and expected that, following the three additional weeks of therapy, her hand problems would resolve. (Id.)

As of October 8, 1997, Plaintiff was felt to have reached maximum improvement through conservative efforts. (R. at 118). Plaintiff began working as a housekeeper at the Ramada Inn and she indicated that she primarily used her left hand to complete her work. She further noted that her pain would resolve with medication, although she complained that all of her fingers felt cold at times. (R. at 117).

Electrodiagnositc studies of both upper extremities were performed on November 11, 1997, by Dr. R.E. Pennington. This evaluation was found to be consistent with bilateral carpal

tunnel disease. (R. at 107). Following this evaluation, Plaintiff returned to Dr. Raes, who found that Plaintiff was barely able to use her right hand and was favoring the left hand. (R. at 139). It was felt that this was causing additional symptoms in the left hand. (Id.) Plaintiff was also noted to have broken her nose the previous day while working at the Ramada Inn. Dr. Raes injected both wrists with Depo Medrol 40 and Zylocaine. Night splints were recommended for both hands as was continued physiotherapy. (Id.) Dr. Raes further advised Plaintiff to stay off work, as he felt this would aggravate her problems. (Id.)

Ms. Anthony again visited Dr. Raes in December of 1997 at which time it was noted that the pain had not improved through the use of braces. (R. at 138). Her hands were noted to be weak and tingly and she was found to be dropping things, particularly with the right hand. (Id.) Plaintiff was also reevaluated by the Roswell Hand Clinic in December of 1997, following a three month interruption in therapy. (R. at 114-116). She was instructed to begin another course of therapy, returning three times a week for three weeks. She was also asked to bring in her splints for assessment, as it was felt these might be causing some increased pain. (Id.)

Plaintiff saw Dr. Neil Chen in January of 1998 for further evaluation of the pain in her hands. (R. at 108-109). It was noted that Plaintiff had undergone a left carpal tunnel release in 1992. (Id.) The injury to Ms. Anthony's right hand in July of 1997 was not felt to be the cause of her bilateral carpal tunnel syndrome. (Id.) Dr. Chen found that Plaintiff would have difficulty returning to her previous work, but that Plaintiff might be able to tolerate jobs involving less repetitive hand movements. (Id.) Dr. Chen did not feel Plaintiff had reached maximum medical improvement. (Id.)

Dr. Raes again evaluated Plaintiff in February of 1998. Although Dr. Chen did not advise

surgery, Dr. Raes felt that surgery was indicated, as the patient was not improving with physiotherapy. (R. at 135).

A physical residual functional capacity assessment was performed on Plaintiff in January of 1998 by Dr. Rayme Romanik. (R. at 124-131). Plaintiff was found to be able to lift 20 pounds occasionally and 10 pounds frequently. Plaintiff was also found to have to ability to sit, stand and/or walk for 6 hours in an 8 hour work-day. (R. at 125). Plaintiff was found to be limited with respect to gross manipulation of the right hand. (R. at 127). No other limitations were established. (Id.)

Plaintiff filled out her Disability Report in February, 1998. (R. at 67-88). She claimed the pain in her hands was worsening daily. She also claimed it was difficult to care for her house, as she was dropping things on a daily basis. (R. at 67). Plaintiff reported having recently seen a physician at Eastern New Mexico Medical Center due to sharp pains in her lower back. She had been given a shot of Demerol at the time and was prescribed Norflex, and later Darvocet, by Dr. Raes. (R. at 68). Plaintiff further stated that, due to the pain in her right hand, she had begun completing all tasks with the left hand, and that this had caused the symptoms in the left hand to worsen. (R. at 73). Plaintiff indicated that she had taken some classes in business college. She listed past work as having been a production worker at an ornament factory, a housekeeper for the Ramada Inn, a delivery driver for a florist's shop and a caregiver at a home health center. (R. at 76). Plaintiff stated she would be having surgery on both hands. (R. at 85).

On her Daily Activities Questionnaire, completed on March 19, 1998, Plaintiff indicated that she was always tired due to the pain medications she took for her hands. (R. at 89). She stated that sometimes she became dizzy when walking up stairs. (Id.) She also indicated she

would frequently begin activities and have to stop due to the pain in her hands. (R. at 90).

An examination in March of 1998, performed by orthopedist Dr. Harold Vichick, revealed no swelling, tenderness or deformity of the right hand and wrist. (R. at 160). Full painless range of motion of the right wrist, thumb and fingers was also noted. (Id.) Dr. Vichick believed there was a possibility of a cervicothoracic etiology for the symptoms in Plaintiff's hands. (R. at 161). He recommended that Plaintiff be evaluated for the presence of a proximal cervicobrachial lesion as a primary cause of her peripheral neurologic symptoms before a carpal tunnel release was performed. (Id.)

Plaintiff again visited Dr. Pennington in early 1999, following a right carpal tunnel release in September of 1998. (R. at 165). She continued to complain of bilateral hand pain with numbness and weakness, as well as cervicogenic headaches. (Id.) Plaintiff at this time complained of having had headaches for nine years. (R. at 170). CT scans of the neck revealed multi-level disc herniation. (Id.) Dr. Pennington's impression was of cervical radiculopathy with cervicogenic headaches secondary to a zygapophyseal joint involvement most probably resulting from traumatic whiplash. (R. at 171). The treatment plan in March of 1999 included Zanaflex, with titration of the dose, Stadol for use only with severe headaches, electrodiagnostic testing to isolate the mechanism of pain radiating into the left arm, prognostic blocking of the zygapophyseal joint, and an extensive spine stabilization program. (Id.)

In April of 1999, Dr. Raes diagnosed Plaintiff with fibromyalgia. (R. at 164). He felt that Ms. Anthony's 'multiple soft tissue injuries' were the probable cause of her fibromyalgia. He stated that, as of April, 1999, Plaintiff was receiving treatment for fibromyalgia and was unable to work. (Id.)

The record in this case contains no further record of treatment until June of 2001, at which time Plaintiff underwent a pelvic ultrasound for evaluation of pelvic pain. (R. at 181). This evaluation revealed two small uterine fibroids, but an otherwise normal ultrasound. (Id.) A second pelvic ultrasound was performed in February of 2002. (R. at 180). This ultrasound was found to be unremarkable. (Id.) In March of 2002, Plaintiff saw Dr. John Kiker for evaluation of urinary frequency, back pain, left lower quadrant pain, and painful urination. (R. at 179). During this time she also returned to Dr. Pennington for further evaluation of headaches and pain in the arms and hands. Plaintiff complained of incapacitating, blinding headaches that made her weak and nauseated. (R. at 178). Plaintiff was noted to be taking Xanax, Effexor and Restoril for sleep. (Id.) Both Dr. Pennington and Dr. Kiker noted that Plaintiff was then working as a librarian at Eastern New Mexico University. (R. at 178, 179).

Ms. Anthony was seen by Dr. Kiker for a cytoscopy in May of 2002. This examination revealed petechial hemorrhages in the lateral bladder wall, consistent with trigonities or early interstitial cystitis. (R. at 177). Plaintiff underwent bladder surgery in June of 2002. (R. at 174-175). The pathology report revealed moderate chronic cystitis in all areas biopsied. (R. at 174).

A psychiatric evaluation was performed by Disability Determination Services for the State of New Mexico in October of 2002. (R. at 188-190). This evaluation revealed that Plaintiff was mildly limited in her ability to attend and concentrate and in her ability to interact with the public. (R. at 189). She was found to be moderately limited in her ability to work without supervision, in her ability to interact with co-workers and supervisors and in her ability to adapt to changes in the workplace. (Id.)

Ms. Anthony also underwent a psychological evaluation, performed by Dr. Will Parsons.

At the time of this evaluation, Ms. Anthony reported taking the following medications: Roxicodone, Soma Compound, Lithium Carbonate, Xanax, Norpramine, and Tylenol.  She also self-reported a diagnosis of Bipolar Disorder, which Dr. Parsons found consistent with her medication regimen.  (R. at 186).  It was felt that Plaintiff was not limited in her ability to understand or remember instructions although it was felt that her ability to concentrate might be somewhat impaired.  (Id.)  Plaintiff was also noted to be limited in the ability to work due to anxiety around large groups of people and to have mild to moderate limitations in social interactions.  (Id.)

## IV.   DISCUSSION

In her Motion to Reverse and Remand for Rehearing (Doc. 9), Plaintiff argues that the ALJ erred in his evaluation of her mental and physical impairments.  She further argues that the ALJ erred in evaluating her current employment and past relevant work, that the ALJ erred in his analysis of Plaintiff's Residual Functional Capacity, that the ALJ erred in evaluating Plaintiff's credibility, and that the ALJ erred in dealing with the vocational expert.

### a.   Plaintiff's Mental and Physical Impairments

Plaintiff first argues that the ALJ erred in evaluating her complaints of fibromyalgia, carpal tunnel syndrome, and various mental impairments, apparently asserting that the ALJ failed to give proper weight to the opinions of her treating physicians and that he failed to adequately credit Plaintiff's subjective complaints of pain.  Plaintiff is correct to point out that the ALJ must give controlling weight to the treating physician's opinion, provided that opinion is well-supported and is not inconsistent with other substantial evidence.  *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001).  20 C.F.R. § 404.1527(d)(2).  Factors to be considered in evaluating a treating

physician's opinions include the opinion's consistency with other evidence, the length of the treatment relationship, the frequency of examination, and the extent to which the opinion is supported by objective medical evidence. *Id.*

Plaintiff argues that the ALJ failed to consider her physician's opinions with regard to both her physical and mental impairments. It is well-established that the ALJ must consider all the evidence and that the ALJ must discuss the uncontroverted evidence he chooses not to rely upon as well as significantly probative evidence that he rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).

With respect to Plaintiff's complaints of both fibromyalgia and carpal tunnel syndrome, it is clear that the ALJ did consider a number of medical records, including those of Dr. Raes, Dr. Chen, and Dr. Pennington, among others. (R. at 15-16). In accordance with *Clifton*, the ALJ discussed his reasons for not crediting Dr. Raes's opinions with respect to fibromyalgia, namely that his opinions were conclusory, that he did not state the basis for such a diagnosis, and that he did not speak to specific problems arising from the condition. (R. at 16). Because the ALJ determined that Dr. Raes's conclusions were conclusory and not supported by objective findings, he was well within his discretion to discredit those conclusions. *White*, 287 F.3d at 907.

Regarding Plaintiff's contentions as to carpal tunnel syndrome, it is apparent that the ALJ considered Plaintiff's treatment records for this disorder and for her neck and shoulder pain. (R. at 15-16). Plaintiff argues that, having established the presence of pain-producing impairments, she is not required to establish anything else. The steps an ALJ must follow in evaluating a pain-producing impairment have been well-defined by the Tenth Circuit. The claimant must first prove, by objective medical evidence, the existence of a pain-producing impairment that could

reasonably be expected to produce the alleged disabling pain. *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)). Next, the claimant must show that a "loose nexus" exists between the proven impairment and the subjective allegations of pain and whether, considering all the evidence, claimant's pain is in fact disabling. *Id.* (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992)). Although the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations. *Luna v. Bowen*. 834 F.2d 161, 165 (10th Cir. 1987).

In the course of determining the credibility of a claimant's statements regarding pain, the ALJ should consider: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medications the individual receives or has received for relief of pain or other symptoms; 5) treatment, other than medications, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *3; *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

In the present case, the ALJ considered these factors and found that the daily activities reported by the claimant, the claimant's inconsistent reports as to the duration of certain of her impairments, and the claimant's reports of the medications taken for pain relief were not

13

consistent with her allegations of disabling pain. (R. at 14-15). The ALJ therefore determined that Plaintiff was not credible in her description of her pain-producing impairments. (Id.) In this case, the ALJ's findings were linked to substantial evidence and the ALJ therefore was within his discretion to discount Plaintiff's allegations of disabling pain. *Huston*, 838 F.2d at 1133.

With respect to Plaintiff's mental impairments, it is apparent that the ALJ considered the findings of Plaintiff's consulting psychologist, Dr. Parsons. While the ALJ did not give significant weight to Dr. Parsons' assessment, he outlined his reasons for doing so in accordance with *Clifton*. Specifically, the ALJ found inconsistencies in Dr. Parsons's conclusions and noted that his opinions seemed to be based almost solely on Plaintiff's own reports, rather than on any clinical findings. (R. at 17). Because the ALJ found that Dr. Parsons's conclusions were not based on specific findings, he was well within his discretion to discredit those conclusions. *White*, 287 F.3d at 907.

        b.      **Plaintiff's Past Relevant Work**

Plaintiff next asserts the ALJ erred in evaluating her past relevant work. Specifically, she argues that the ALJ erred in finding that she had engaged in substantial gainful activity during the period under review. In fact, a careful reading of the record reveals that, while the ALJ believed Plaintiff had engaged in substantial gainful activity *during some intervals* of the period under review, the ALJ ultimately found that the record was inconclusive as to when Plaintiff was engaged in this activity. (R. at 13-14). Plaintiff has the burden, at step one of the sequential evaluation, of establishing that she has not engaged in substantial gainful activity during the period under review. *Reyes*, 845 F.2d at 243. However, because it was unclear from the record when and if Plaintiff engaged in substantial gainful activity during the time period in question, the ALJ

proceeded to step #2 of the sequential evaluation. Plaintiff's argument on this score is therefore without merit.

### c. Assessment of Residual Functional Capacity

Plaintiff further argues that the ALJ erred in evaluating her Residual Functional Capacity. She contends that, because the ALJ incorrectly analyzed her medical impairments, the ALJ's RFC assessment was necessarily incorrect. A claimant's RFC is determined by what an individual can do despite her limitations, and it is based upon all the relevant evidence including medical records, observations of treating physicians and others, as well as on a claimant's own descriptions of her limitations. 20 C.F.R. §§ 416.945(a)-416.946.

An examination of the ALJ's opinion reveals that the records of treating and consulting physicians, as well as Plaintiff's own descriptions of her complaints, were carefully reviewed. (R. at 14-17). Although the ALJ did reject some conclusions of Plaintiff's treating physicians, an ALJ may disregard the opinions of a treating physician if he sets forth specific, legitimate reasons why he chooses not to rely on those opinions. *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996). In the present case, the ALJ set forth specific reasons for discounting the opinions of Dr. Raes, as well as for finding that Plaintiff was not credible, and it is apparent that the RFC determination was supported by substantial evidence. As such, Plaintiff's contention that the ALJ erred in evaluating her RFC must be rejected.

### d. Assessment of Plaintiff's Credibility

Plaintiff also contends that the ALJ erred in assessing her credibility. The ALJ determined that Plaintiff's subjective complaints were exaggerated in light of the record as a whole. (R. at 15-17). It is well-established that subjective testimony alone that the claimant has symptoms

cannot establish a finding of disability. *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988). Objective medical evidence must establish an impairment and statements regarding the intensity and persistence of symptoms must be consistent with the medical findings and signs. *Id.*

When determining the credibility of pain testimony, the ALJ should consider factors such as the levels of medication and their effectiveness, the extensiveness of attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility, the motivation of and relationship between the Plaintiff and other witnesses, and the consistency or compatibility of non-medical testimony with the objective medical record. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

The Tenth Circuit generally treats credibility determinations made by the ALJ as binding upon review. *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). The Court has previously stated that credibility determinations are particularly the province of the finder of fact and the Court has declined to upset such determination when supported by substantial evidence. *Diaz v. Sec'y of Health and Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990). In the present case, the ALJ's determinations with respect to Plaintiff's credibility were supported by substantial evidence. As such, the decision of the Commissioner should be upheld with respect to the ALJ's credibility determination.

      **e.**    **Vocational Expert Testimony**

Because the ALJ found that Plaintiff could return to some of her past relevant work, it is not necessary to proceed to an analysis at step five of the sequential evaluation. I will nevertheless address Plaintiff's final contention that the ALJ erred in dealing with the Vocational Expert ("VE"). Plaintiff argues that the VE in fact declared her to be "unemployable." In making

this argument, Plaintiff contends that the hearing transcript in this case was incorrectly transcribed. A hypothetical was posed to the VE in which it was assumed that Plaintiff could not work 20-25 days out of the month. Plaintiff's attorney then questioned the VE as follows:

> Q: Any part-time work would be precluded?
>
> A: Right. She said she couldn't work 20 to 25 days out of the week. That's what she testified. That would make her *available* [INAUDIBLE] [Italics added] (R. at 265).

In Plaintiff's Brief, her attorney argues that the record was incorrectly transcribed and that, instead of "available", the VE opined that Plaintiff was "unemployable." Plaintiff has not provided this Court with evidence, beyond the assertions of her own attorney, tending to show that the record was incorrectly transcribed.

Even assuming Plaintiff is correct about a transcription error, her argument is still without merit. The VE's response was based upon a hypothetical posed by the ALJ which described an individual unable to maintain a regular work schedule. (R. at 264). This hypothetical set forth limitations which the ALJ found did not apply to the Plaintiff. A vocational expert's testimony is not binding on an ALJ if it incorporates limitations that the ALJ finds do not apply to the Claimant. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1999). As such, the ALJ was correct not to incorporate the VE's response to this hypothetical into his decision and Plaintiff's argument on this point must be rejected.

### V.   CONCLUSION

Upon review of the evidence presented in this Motion to Reverse and Remand for Rehearing, this Court has determined that the Commissioner's decision was supported by substantial evidence and that the ALJ adequately developed the record. Accordingly, Plaintiff's

Motion to Reverse and Remand for Rehearing is **DENIED**.

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**